IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

NADINE SEYMOUR, et al.,

        Plaintiffs,

v.                                          CIVIL ACTION NO. 2:15-cv-01542

JOHNSON & JOHNSON, et al.,

        Defendants.

MEMORANDUM OPINION AND ORDER
*(Defendants' Motions to Dismiss, Sever, and Stay, and Plaintiffs' Motion to Remand)*

Pending before the court are the defendants' Motion to Dismiss [Docket 2], the defendants' Motion to Sever [Docket 3], the defendants' Motion to Stay [Docket 7], and the plaintiffs' Motion to Remand to State Court [Docket 9]. For the reasons set forth below, the Motion to Dismiss is **GRANTED** except as to the one Texas plaintiff, Nadine Seymour; the Motion to Sever is **DENIED as moot**; the Motion to Stay is **DENIED as moot**; and the Motion to Remand to State Court is **DENIED**.

I. Introduction

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 70,000 cases currently pending, approximately 23,500 of which are in the Ethicon, Inc. MDL, MDL 2327. In this particular case, the plaintiffs were surgically implanted with the

Gynecare TVT product manufactured by Ethicon, Inc., a subsidiary of Johnson & Johnson (collectively, "the defendants"). (*See* First Am. Pet. & Jury Demand ("Petition") [Docket 1-5] ¶ 13, Ex. 1). The plaintiffs claim that as a result of implantation of these mesh products they experienced multiple complications, including "mesh erosion, mesh contraction, infection, fistula, inflammation, scar tissue, organ perforation, dyspareunia (pain during sexual intercourse), blood loss, acute and chronic nerve damage and pain, pudendal nerve damage, pelvic floor damage, chronic pelvic pain, urinary and fecal incontinence, and prolapse of organs." (*Id.* ¶ 33). The plaintiffs allege negligence, design defect, manufacturing defect, failure to warn, vicarious liability, compensatory damages, loss of consortium, punitive damages, and fraudulent concealment. (*Id.* ¶¶ 41–65).

The Petition, initially filed in Texas state court, names thirty-one plaintiffs. One of them resides in Texas and received her surgery in Texas. (*Id.* ¶ 2). The remaining plaintiffs are out-of-state residents, (*id.* at Ex. 1), including one plaintiff from New Jersey who received her surgery in New Jersey. (*Id.* ¶ 3). It is not clear from the Petition where the remaining plaintiffs received their implantation surgeries. The Petition alleges the defendants are incorporated in New Jersey and that each "engages in business in Texas but does not maintain a regular place of business in the state or a designated agent for service of process." (*Id.* ¶¶ 5–6).

On September 26, 2014, the defendants each appeared specially to contest personal jurisdiction over the claims alleged by the thirty out-of-state plaintiffs. (*See* J&J's Spec. App. [Docket 1-11]; Ethicon's Spec. App. [Docket 1-12]). The defendants preserved those objections to personal jurisdiction in their respective Answers. (*See* J&J's Original Answer & Defenses [Docket 1-13]; Ethicon's Original Answer & Defenses [Docket 1-14]).

The defendants removed this action to the U.S. District Court for the Southern District of Texas on October 2, 2014, asserting the court "has original subject matter jurisdiction . . . pursuant to 28 U.S.C. § 1332(a) because there is complete diversity among all properly joined and served parties and the amount in controversy exceeds $75,000.00." (*See* Notice of Removal [Docket 1], at 2). On the same day, the defendants moved to dismiss the claims of the thirty out-of-state plaintiffs for lack of personal jurisdiction, (Mot. to Dismiss [Docket 2]), and moved to sever all claims brought by the New Jersey plaintiff. (Mot. to Sever [Docket 3]). On October 9, 2014, the defendants moved to stay all proceedings in the Texas federal court, pending a decision to transfer the case into MDL 2327. (Mot. to Stay [Docket 7]). On October 23, 2014, the plaintiffs moved to remand the case to state court for lack of subject matter jurisdiction. (Mot. for Remand [Docket 9]). Finally, on February 5, 2015, the case was transferred into MDL 2327 before this court, (*see* Transfer Order [Docket 28]), rendering moot the defendants' Motion to Stay. The pending motions are ripe for disposition.

II. **Order of Consideration**

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases. Here, there are two intertwined jurisdictional issues presented in the defendants' Motion to Dismiss and the plaintiffs' Motion to Remand to State Court. On the one hand, the defendants argue that the out-of-state plaintiffs' claims, including those alleged by the New Jersey plaintiff who shares residency with the defendants, should be dismissed because a Texas court cannot exercise personal jurisdiction over the defendants on those claims. Dismissing those claims would create complete diversity between the remaining parties, thereby giving the court subject matter jurisdiction. Accordingly, the defendants urge the court to consider personal jurisdiction first. On the other hand, the plaintiffs contend that personal jurisdiction exists for all claims and

3

that joinder of the claims is proper, including claims brought by the out-of-state plaintiffs, thus eliminating complete diversity and stripping the court of subject matter jurisdiction. The plaintiffs urge the court to resolve the subject-matter-jurisdiction inquiry prior to addressing personal jurisdiction.

The defendants cite *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999), for the proposition that the court may decide issues of personal jurisdiction before taking up subject matter jurisdiction. Contending the opposite, the plaintiffs rely heavily on *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998), a case *Ruhrgas* expressly distinguished. 526 U.S. at 583 ("The Fifth Circuit incorrectly read *Steel Co.* to teach that subject-matter jurisdiction must be found to exist, not only before a federal court reaches the merits, but also before personal jurisdiction is addressed." (citation omitted)). In *Ruhrgas*, a unanimous Court stated:

> We hold that in cases removed from state court to federal court, as in cases originating in federal court, there is no unyielding jurisdictional hierarchy. Customarily, a federal court first resolves doubts about its jurisdiction over the subject matter, but there are circumstances in which a district court appropriately accords priority to a personal jurisdiction inquiry.

*Id.* at 578. In reaching the conclusion that it was within the lower court's discretion to address personal jurisdiction first, the Court reasoned: "the impediment to subject-matter jurisdiction on which [plaintiff] relies—lack of complete diversity—rests on statutory interpretation, not constitutional command," *id.* at 584, whereas "[defendant] relies on the constitutional safeguard of due process to stop the court from proceeding to the merits of the case." *Id.* (citation omitted). "Where . . . a district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question, the court does not abuse its discretion by turning directly to personal jurisdiction." *Id.* at 588 (footnote omitted); *see also Pervasive Software Inc. v. Lexware GmbH &*

4

*Co.*, 688 F.3d 214, 232 (5th Cir. 2012) (same); *Lolavar v. de Santibanes*, 430 F.3d 221, 227 (4th Cir. 2005) (same).

Here, the parties' arguments on subject matter jurisdiction, specifically on complete diversity, are grounded in the relatively recent and untested doctrine of procedural or fraudulent[1] misjoinder. "According to the Eleventh Circuit, the federal court should disregard the citizenship of a fraudulently-joined party . . . when the plaintiff joins co-parties—such that complete diversity of citizenship between plaintiffs and defendants does not exist—when a factual nexus among the claims asserted (by or) against those parties is not sufficient to satisfy Federal Civil Rule 20." 14B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3723 (West Group 4th ed. 2009 & Supp. 2010–14, Supp. 2015 forthcoming) (discussing *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000)). Like many of their sister circuits, neither the Fifth nor Fourth Circuit Courts of Appeals has expressly adopted the doctrine. *See In re Benjamin Moore & Co.*, 318 F.3d 626, 630–31 (5th Cir. 2002) ("[W]ithout detracting from the force of the *Tapscott* principle that fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction, we do not reach its application in this case."); *Wyatt v. Charleston Area Med. Ctr., Inc.*, 651 F. Supp. 2d 492, 496 (S.D. W. Va. 2009) (explaining the difference between fraudulent joinder and fraudulent *mis*joinder and noting the latter is "relatively new and not clearly defined"). In other words,

---

[1] Many cases refer to the mechanism as "fraudulent misjoinder," likely because of the influence of the well-established doctrine of "fraudulent joinder" on the former's development. But it is not clear that a defendant must prove joinder of a non-diverse plaintiff was fraudulent or egregious to invoke the doctrine. *See, e.g.*, Laura J. Hines & Steven S. Gensler, *Driving Misjoinder: The Improper Party Problem in Removal Jurisdiction*, 57 Ala. L. Rev. 779, 819–21 (2006) (arguing against requiring courts to find evidence of "egregious[ness] or bad faith" for procedural misjoinder (internal quotation marks and citation omitted)).

engaging the parties' arguments on procedural or fraudulent misjoinder, and in turn subject matter jurisdiction, may require passage upon shaky jurisdictional grounds.

By contrast, the personal jurisdiction inquiry here turns on a relatively simple issue: whether a Texas court may exercise jurisdiction over claims arising outside Texas against out-of-state corporate defendants based on the defendants' unrelated contacts with the forum.[2] *See Evans v. Johnson & Johnson*, No. CIV.A. H-14-2800, 2014 WL 7342404, at *3 (S.D. Tex. Dec. 23, 2014) (examining materially indistinguishable factual and legal arguments and "determin[ing] that the most efficient course of action is to consider the motion to dismiss for lack of personal jurisdiction"). Additionally, as noted below, there is no complex question of state law involved.

Therefore, in keeping with *Ruhrgas*, I **FIND** the question of personal jurisdiction here to be straightforward, whereas the issue of subject matter jurisdiction raises difficult and novel questions of federal procedural law. Consequently, I address personal jurisdiction first. As explained more fully below, if personal jurisdiction is proper, then I will pass to the fraudulent misjoinder arguments to decide subject matter jurisdiction. If, however, personal jurisdiction is lacking, then the out-of-state plaintiffs' claims must be dismissed, resulting in complete diversity and giving the court subject matter jurisdiction over the remaining claims: those of the one Texas plaintiff against the New Jersey defendants.

## III. Personal Jurisdiction

### A. Legal Standard

This case has been transferred from the Northern District of Texas to the Southern District of West Virginia, MDL 2327. Accordingly, I apply the law of the Fourth Circuit to

---

[2] The plaintiffs do not argue claims brought by out-of-state plaintiffs are based on specific jurisdiction. (*See generally* Pls.' Resp. to Defs.' Mot. to Dismiss [Docket 10]).

issues dealing with federal procedure. *See In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) ("When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located." (citation omitted)). The Fourth Circuit has consistently stated that "[w]hen a district court considers a question of personal jurisdiction . . . , the plaintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction." *Universal Leather, L.L.C. v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014) (citing *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009)). "In considering whether the plaintiff has met this burden, the district court 'must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.'" *Id.* (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)).

Because a federal court looks to state law when determining whether it may exercise personal jurisdiction over a litigant, I also apply the substantive law of Texas to the issue of personal jurisdiction. *See In re Hydroxycut Mktg. & Sales Practices Litig.*, 810 F. Supp. 2d 1100, 1106 (S.D. Cal. 2011) (noting "the MDL court applies the law of the transferor forum to determine personal jurisdiction"); *In re Papst Licensing GMBH & Co. KG Litig.*, 602 F. Supp. 2d 10, 14 (D.D.C. 2009) (same). "[Texas's] long-arm statute reaches 'as far as the federal constitutional requirements for due process will allow.'" *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010) (quoting *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002)). Accordingly, there is no need for further analysis of Texas law, and I consider the "limits imposed by federal due process." *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014) (discussing application of California's long-arm statute) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985)).

As mentioned above, the due process question here concerns general jurisdiction. Therefore, I must determine whether the corporate defendants' contacts with Texas are so "continuous and systematic" that the defendants' may be "fairly regarded as at home" in the state and thus answerable there for any and all claims. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2854 (2011). In a recent case addressing general (or all-purpose) jurisdiction, the Supreme Court reiterated the thrust of *Goodyear* when describing where corporations are typically "at home":

> [T]he place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction. Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable. These bases afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims.

*Daimler*, 134 S. Ct. at 760 (internal quotation marks and citations omitted). The Court added that "*Goodyear* did not hold that a corporation may be subject to general jurisdiction *only* in a forum where it is incorporated or has its principal place of business," *Daimler*, 134 S. Ct. at 760, acknowledging corporate defendants can be haled into court outside their home jurisdictions based on unrelated contacts under the right circumstances.

Specifically, the Court pointed out: "*Perkins v. Benguet Consol. Mining Co.*[, 342 U.S. 437 (1952),] remains the textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum." *Daimler*, 134 S. Ct. at 755–56 (internal quotation marks and citation omitted). In *Perkins*, the "president, who was also the general manager and principal stockholder of the company," performed the following activities, among others, in the forum state: paid employee salaries, maintained an office from which he conducted company affairs and kept company files, "used and maintained . . . two active bank accounts carrying substantial balances of company funds," held directors' meetings, and

8

supervised company policy. 342 U.S. at 447–48. Furthermore, "all key business decisions were made in the [forum] State," and "[i]n those circumstances, Ohio was the corporation's principal, if temporary, place of business so that Ohio jurisdiction was proper even over a cause of action unrelated to the activities in the State." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 n.11 (1984) (discussing *Perkins*). With the foregoing principles of general jurisdiction in mind, I turn to the facts at bar.

### B. Discussion

The defendants are both incorporated in New Jersey, and the plaintiffs point out that although the defendants "engage[] in business in Texas," neither "maintain[s] a regular place of business in th[e] state or a designated agent for service of process." (*See* Petition ¶¶ 5–6; *see also* J&J's Spec. App. at 4 (asserting New Jersey is principal place of business); Ethicon's Spec. App. at 4 (same)). In other words, Texas is not a paradigm forum under *Goodyear* for claims against these two corporate defendants based on general jurisdiction.

The plaintiffs thus ask the court to recognize an additional basis supporting the exercise of all-purpose jurisdiction. Suggesting *Perkins* provides another "example" of when such jurisdiction may be appropriate over a corporate defendant whose contacts with the forum are unrelated to particular claims alleged, the plaintiffs contend the following contacts of the defendants are so systematic and continuous as to render them at home in Texas: (1) large sales of products, specifically more sales than in New Jersey; (2) the defendants' hiring and training of Texas-based employees, including physicians acting as consultants; (3) marketing of products; (4) maintenance of company files and equipment; (5) payment of employee salaries; and (6) maintenance of websites directed to all states, including Texas. (*See* Pls.' Resp. to Defs.' Mot. to Dismiss [Docket 10], at 2–5).

As an initial matter, *Perkins* is better understood not as a case in which the Court recognized an additional basis for general jurisdiction outside the two paradigms, but rather as a case in which the defendant's supervisory operations in the forum effectively rendered the forum the defendant's principal place of business. *See Daimler*, 134 S. Ct. at 756 ("We held [in *Perkins*] that the Ohio courts could exercise general jurisdiction over Benguet without offending due process. That was so, we later noted, because Ohio was the corporation's *principal, if temporary, place of business*." (emphasis added) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 n.11 (1984) (internal quotation marks omitted))). Accordingly, the plaintiffs' reliance on *Perkins* is misplaced because they cannot plausibly assert Texas is either defendant's principal place of business—temporary or permanent—when they concede that neither defendant even maintains a regular place of business in the state. I will, nonetheless, evaluate the contacts alleged by the plaintiffs.

Considered in the light most favorable to plaintiffs, no facts alleged here suggest the kind of corporate activity in Texas that the Supreme Court has found sufficient to confer all-purpose jurisdiction over a corporate defendant. The plaintiffs have failed to show the alleged injuries of the out-of-state plaintiffs occurred in Texas, and the argument that the defendants market and sell large amounts of products in the forum is unavailing for the purposes of general jurisdiction. *See Daimler*, 134 U.S. at 762 n.20 ("Nothing in *International Shoe* and its progeny suggests that a particular quantum of local activity should give a State authority over a far larger quantum of . . . activity having no connection to any in-state activity." (internal quotation marks and citation omitted)). Likewise, absent some showing of activity typical of corporate headquarters, which the plaintiffs have not made, the fact that the defendants train and direct employees in the forum fails to confer general jurisdiction. *See id.* ("A corporation that operates in many places

can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." (citation omitted)).

Additionally, there is no evidence that either defendant makes any, let alone all, key business decisions in Texas. *See Perkins*, 342 U.S. at 448 (describing key business decisions made in the forum). Nor has there been a showing that any of the defendants' executives carry on in Texas systematic and continuous supervision of company activities. That the defendants' Texas employees may receive paychecks through direct deposit, (*see* Ex. B to Pls.' Resp. to Defs.' Mot. to Dismiss [Docket 10-2], at 7), does not render the defendants "at home" in Texas. *Cf. Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416–17 (1984) (declining to consider where a check paid by a company is drawn "when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction"). Relatedly, there is no evidence that the defendants hold substantial sums of company funds in Texas bank accounts. Finally, permitting the maintenance of a website accessible in all states to tip the scale in the general-jurisdiction calculus would effectively eviscerate the doctrine: the defendants here and countless other corporations, large and small, would be subject to all-purpose jurisdiction nationwide. *See GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (4th Cir. 2000) ("We do not believe that the advent of advanced technology, say as with the Internet, should vitiate long-held and inviolate principles of federal court jurisdiction.").

In short, neither defendant is incorporated or maintains its principal place of business in Texas, and I **FIND** the facts here, construed in the light most favorable to the plaintiffs, do not meet the high bar for recognizing a new basis for general jurisdiction over corporate defendants. As the *Daimler* Court lamented: "Plaintiffs would have us look beyond the exemplar bases

*Goodyear* identified, and approve the exercise of general jurisdiction in every State in which a corporation engages in a substantial, continuous, and systematic course of business. That formulation . . . is unacceptably grasping." *Id.* at 761 (internal quotation marks and citation omitted)). Accordingly, I **GRANT** the defendants' Motion, and **dismiss without prejudice** all claims brought by the thirty non-Texas, out-of-state plaintiffs in this action, which fail for lack of personal jurisdiction. The one plaintiff remaining is Texas resident Nadine Seymour.

### IV. Subject Matter Jurisdiction

#### A. Legal Standard

Regarding subject matter jurisdiction, the diversity statute provides: "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between—(1) citizens of different States; . . . ." 28 U.S.C. § 1332(a). Defendants may remove actions initially filed in state court to federal court if they satisfy § 1332 and the removal statute's requirements. *See generally id.* § 1446. Under appropriate circumstances, such as when the prayer for relief in state court does not specify the amount demanded, "the notice of removal may assert the amount in controversy" for the purposes of demonstrating federal diversity jurisdiction. *Id.* § 1446(c)(2)(A).

#### B. Discussion

Because I have concluded the court lacks personal jurisdiction over the defendants for the out-of-state plaintiffs' claims, including claims brought by the New Jersey plaintiff, I have dismissed them. Accordingly, there is complete diversity between the remaining parties: the one Texas plaintiff and the New Jersey defendants. Per 28 U.S.C. § 1446(c)(2), the defendants have satisfied the court that the amount-in-controversy requirement is met. (*See* Notice of Removal [Docket 1] ¶¶ 15–19). Subject matter jurisdiction based on the diversity statute exists, and there

is no reason to transgress the defendants' right of removal to federal court. Because the court possesses subject matter jurisdiction, the Plaintiffs' Motion to Remand to State Court is **DENIED**.

### C. Other Pending Motions

In light of the court's dismissal of the out-of-state plaintiffs' claims, the defendants' Motion to Sever is **DENIED as moot**. Given the transfer of the case to this court by order dated February 5, 2015, the defendants' Motion to Stay pending transfer is also **DENIED as moot**.

## V. Conclusion

For the reasons set forth above, the defendants' Motion to Dismiss [Docket 2] is **GRANTED** except as to the one Texas plaintiff, Nadine Seymour; the defendants' Motion to Sever [Docket 3] is **DENIED as moot**; and the defendants' Motion to Stay [Docket 7] is **DENIED as moot**. The plaintiffs' Motion to Remand to State Court [Docket 9] is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: April 8, 2015

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE